UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------------------X
BRANDON LISI,

                            Plaintiff,

**MEMORANDUM & ORDER**
19-cv-7317 (JMA) (AYS)

        -against-

FEDERAL BUREAU OF PRISONS,
UNITED STATES OF AMERICA,
DEPARTMENT OF JUSTICE, JOHN DOES #1-#10,
JANES DOES #1-#10, and XYZ ENTITIES #1-#10,

FILED
CLERK

2/11/2025 10:28 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

                           Defendants.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Presently before the Court is the motion by Defendants United States of America, the Bureau of Prisons ("BOP"), and the Department of Justice (collectively, "Defendants," the "Government" or the "United States") for summary judgment dismissing this action pursuant to Federal Rule of Civil Procedure 56. (ECF No. 49.) Plaintiff's claims stem from the circumstances surrounding a July 6, 2015, oral surgery performed on Plaintiff while he was incarcerated in United States Penitentiary ("USP") Canaan located in Waymart, Pennsylvania. (See Compl., ECF No 1.) Plaintiff, at the time acting pro se, commenced this action pursuant to: 1) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2401(b) and 2671-2680 (the "FTCA") for medical malpractice; and 2) the Eighth Amendment of the United States Constitution for deliberate indifference.[1] (See Compl.)

---

[1] Plaintiff also purports to bring claims pursuant to 42 U.S.C. § 1983. (See Compl. ¶ 8.) The claims here, however, are against federal agencies and officers, and therefore causes of action under § 1983 are unavailable. See Selvam v. United States, No. 21-2513-CV, 2022 WL 6589550, at *1 (2d Cir. Oct. 11, 2022) ("An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." (citing Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991)). The Court construes the claims "brought under brought under § 1983 as proceeding under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)." Id. (citing Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988)); see also Ashcroft v. Iqbal, 556 U.S. 662, 675–76, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) ("In the

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and this action is DISMISSED.

## I.     BACKGROUND[2]

**A.     Factual Background**

Plaintiff Brandon Lisi began his incarceration in June of 2014. (Pl.'s Dep. Tr. 8.) He was incarcerated first at USP Canaan before moving to the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") in September of 2015. (Id. at 44.) In June or July of 2019, Plaintiff was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York until the date of his release in May of 2020. (Id. at 45.)

In 2012, prior to his incarceration, Plaintiff was referred to Dr. Ian Ganly at Memorial Sloan Kettering ("MSK") regarding a cyst in his mouth. (ECF No. 59 ¶ 9.) In early February of 2012, Plaintiff underwent a fine needle aspiration as well as a laryngoscopy procedure. (Id. ¶ 10.) Subsequently, Dr. Ganly recommended marsupialization[3] and removal of the tooth where the cyst

---

limited settings where Bivens does apply, the implied cause of action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983.") (internal citations omitted). To wit, Plaintiff makes no mention of § 1983 claims in his opposition to summary judgment. (See generally ECF No. 55).

[2] The facts set forth in this Opinion are drawn from Plaintiff's Complaint (ECF No. 1 ("Compl.")) and the parties' submissions in connection with Defendants' motion for summary judgment. The Court draws from the parties' Local Civil Rule 56.1 Combined Statement of Material Facts (ECF No. 59); Plaintiff's Deposition Transcript (ECF No. 54-1 ("Pl.'s Dep. Tr.")), Dr. Rosalind Hartland's Deposition Transcript (ECF No. 54-2 ("Hartland Dep. Tr.")), and Dr. Stephen Solfanelli's Deposition Transcript (ECF No. 54-3 ("Solfanelli Dep. Tr.")). Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and testimony cited therein. For ease of reference, the Court refers to Defendants' brief in support of their motion for summary judgment as "Defs.' Br." (ECF No. 50), to Plaintiff's opposition brief as "Pl.'s Opp." (ECF No. 55), and to Defendants' reply brief as "Defs.' Reply Br." (ECF No. 58.)

[3] "Marsupialization is the conversion of a cyst into a pouch by suturing the cyst lining to the oral mucosa. This conservative method is used, if the preservation of the displaced teeth is desirable, especially in a young patient. It is also used if the cyst is large and there is a possibility of destruction of the surrounding tissue and a pathologic fracture of the mandible." El Gaouzi Rajae & El Harti Karima, Dentigerous cyst: enucleation or marsupialization? (a case report), PAN AFR. MED. J., (November 10, 2021). https://pmc.ncbi.nlm.nih.gov/articles/PMC8654877/#:~:text=Marsupialization%20is%20the%20conversion%20of,especially%20in%20a%20young%20patient.

was located for treatment of the left maxillary cyst. (Id.) Dr. Ganly did not perform the procedure on Plaintiff. (Id. ¶ 11.)

Upon Plaintiff's arrival at USP Canaan in June of 2014, he was examined in the dental unit by Dr. Rosalind Hartland. (Id. ¶ 15.) Dr. Hartland observed Plaintiff had upper left area swelling and decayed teeth in the upper right and lower left area. (Id. ¶ 17.) On October 10, 2014, Plaintiff next visited Dr. Hartland for a sick call consultation for a bad toothache in tooth number #19 on the lower left. (Id. ¶ 20.) Dr. Hartland extracted tooth #19 and ordered a panoramic radiograph to further evaluate the cyst. (Id. ¶ 21; Hartland Dep. Tr. 46.) Dr. Hartland recommended that the cyst be removed but such a procedure needed to be performed by an oral surgeon outside USP Canaan. (Id. ¶ 22; Hartland Dep. Tr. 47.) On October 29, 2014, the procedure to remove Plaintiff's cyst was approved. (Id. ¶ 25.) On February 6, 2015, Dr. Hartland saw Plaintiff for a cavity. (Id. ¶ 28.)

On May 26, 2015, Dr. Stephen Solfanelli saw Plaintiff in connection with the procedure to remove Plaintiff's cyst. (Id. ¶ 29.) Dr. Solfanelli is a specialist in oral maxillofacial surgery and maintained a private practice until his retirement in 2022. (Id. ¶¶ 28, 31; Solfanelli Dep. Tr. 7.) On May 26, 2015, after examining Plaintiff, Dr. Solfanelli requested additional diagnostic tests and any prior records from MSK. (Id. ¶ 30.) On June 30, 2015, a CT scan showed that there was "partial erosion of bone and encroachment [of the cyst] upon the sinus cavity." (Id. ¶ 63.) Dr. Solfanelli explained that the interface between the cyst lining and the sinus lining can make it difficult to remove the cyst without inadvertently damaging the sinus lining during surgery. (Id. ¶ 33.)

On July 6, 2015, after receiving a copy of Plaintiff's imaging report from the Regional Hospital of Scranton, Dr. Solfanelli proceeded with enucleating and removing the cyst. (Id. ¶ 34.) At a follow-up visit with Dr. Solfanelli on July 16, 2015, Plaintiff had no complaints, there was no sign of infection and healing appeared to be progressing as expected. (Id. ¶ 35.) On August 19,

3

2015, after Plaintiff returned to USP Canaan, Dr. Hartland referred Plaintiff back to Dr. Solfanelli because he was experiencing issues with his sinuses. (Id. ¶ 37.) According to Plaintiff, during this time he believed that "the wound had become infected." (Pl.'s Dep. Tr. 47). On September 3, 2015, Plaintiff returned to Dr. Solfanelli with signs of a reinfection of the left maxilla. (ECF No. 59 ¶ 38.)

On September 22, 2015, Plaintiff was transferred from USP Canaan to FCI Fort Dix. (Id. ¶ 39.) Plaintiff refused the trip to an outside oral surgeon for further treatment on tooth #14 scheduled for December 21, 2015 and the BOP discontinued the oral surgery request. (Id. ¶ 41.) On November 2, 2016, Plaintiff was seen by Dr. Carl Bifano for a consultation regarding the oral maxillary cyst. (Id. ¶ 45.) Dr. Bifano was affiliated with Cooper University Hospital. (Id. ¶ 47.) At the oral-maxillofacial consultation, it was determined that Plaintiff demonstrated cyst enucleation and that "extraction of tooth #14 was needed, but was no longer feasible due to the missing bone portions in [plaintiff]'s mouth." (Id. ¶ 71.) On December 12, 2016, Dr. Bifano performed an Incisional Biopsy. (Id. ¶ 46.) During a March 2017 follow-up appointment with Health Services at Fort Dix, Plaintiff had no new symptoms and no complaints regarding his "oral maxillary issue." (Id. ¶ 48.)

According to Defendants, during the relevant time period of June 2014 through September 2015, when Plaintiff was housed at USP Canaan, BOP contracted with Integrated Management Systems ("IMS"), a third-party contractor, to provide certain medical services, including oral surgery, to inmates at USP Canaan. (Id. ¶ 49.) Dr. Solfanelli of Commonwealth Health Regional Hospital of Scranton examined and treated BOP inmates as a contract oral surgeon through IMS, and provided medical services, including oral surgery. (Id. ¶ 53.) Defendants claim that during the relevant period of September 2015 through September 2019, when Plaintiff was housed at FCI

Fort Dix, BOP contracted with NaphCare to provide off-site medical services for FCI Fort Dix inmates. (Id. ¶ 54.)

Plaintiff claims that he is "permanently disfigured," that his sense of smell is "gone/greatly diminished," and that he is in "constant pain" due to delay and the "botche[d] surgery." (Compl. ¶¶ 25-27.) Specifically, Plaintiff claims that Dr. Solfanelli failed to "marsupialize the tooth" during the July 6, 2015, surgery, and that the BOP unnecessarily delayed performance of the surgery. (Pl.'s Dep. Tr. 50, 61; see Compl. ¶ 27 ("the BOP allowed 382 days for a non-violent inmate to suffer crucial pain…")) Plaintiff claims that this delay, negligence by Dr. Solfanelli during surgery, and Dr. Hartland's negligence in failing to turn over medical records to Dr. Solfanelli, caused Plaintiff's current injuries. (Id.; see also ECF No. 56-1, Report of Lloyd K. Klausner, D.M.D., ("Klausner Report") at 8 (opining that the surgery performed on July 6, 2015 "departed from accepted standards of medical practice and procedure."))

**B.**     **Procedural History**

On December 30, 2019, Plaintiff, acting pro se, commenced the instant action by filing the Complaint against all Defendants. (ECF No. 1). Plaintiff asserted causes of action under the FTCA for medical malpractice and causes of action for Eighth Amendment deliberate indifference. (See id.; see also Pl.'s Opp at 19.) Plaintiff brought his claims against the BOP, the United States of America, the Department of Justice, and unnamed "John" and "Jane Doe" Defendants and "XYZ" entities. (See id. at 1.) On April 28, 2021, Plaintiff retained counsel. (ECF No. 24.)

On February 5, 2024, Defendants requested a pre-motion conference pursuant to the undersigned's Individual Practice Rules to obtain leave to file the instant motion. (ECF No. 42.) On February 8, 2024, Plaintiff filed its response. (ECF No. 43.) The Court waived its pre-motion conference requirement and set a briefing schedule, and on August 9, 2024, Defendants filed their fully briefed motion for summary judgment. (ECF No. 49.)

5

## II.  LEGAL STANDARDS

A.  **Subject Matter Jurisdiction**

A district court must dismiss an action for lack of subject matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it." Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (quoting Makarova, 201 F.3d at 113). In evaluating whether a plaintiff has met burden, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), aff'd, 561 U.S. 247 (2010). "Courts may also 'refer[ ] to evidence outside the pleadings' to evaluate whether subject matter jurisdiction exists. Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted).

1. **FTCA Jurisdiction**

"Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States." Stepanian v. United States, No. 15-CV-3727, 2017 WL 105909, at *3 (E.D.N.Y. Jan. 10, 2017) (citing Fraser v. United States, 490 F. Supp. 2d 302, 309 (E.D.N.Y. 2007)); see also McGowan v. United States, 825 F.3d 118, 126 (2d Cir. 2016) ("[T]he FTCA waives the sovereign immunity of the United States against claims for property damage or personal injury 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment....'" (quoting 28 U.S.C. § 1346(b)(1))). "A plaintiff likewise bears the burden of showing that he

6

exhausted his administrative remedies by presenting his claim to the appropriate federal agency before filing suit." Doane v. United States, 369 F. Supp. 3d 422, 445 (N.D.N.Y. 2019) (citing 28 U.S.C. § 2675(a)); Cooke v. United States, 918 F.3d 77 (2d Cir. 2019) (similar); see also Mora v. United States, 955 F.2d 156, 160 (2d Cir. 1992) ("[P]resentment is a prerequisite to the institution of a suit under the FTCA."). In addition, "the FTCA's waiver of sovereign immunity requires a claimant to abide by the terms of 28 U.S.C. § 2401(b), which provides that "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim.'" Burke v. United States Postal Serv., No. 19-CV-2539, 2020 WL 9816003, at *2 (E.D.N.Y. Sept. 28, 2020) (citing United States v. Kwai Fun Wong, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)); Watson v. United States, 865 F.3d 123, 130 (2d Cir. 2017) (same).

**B.     Summary Judgment**

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Choi v. Tower Research Capital LLC, 2 F.4th 10, 16 (2d Cir. 2021); see McKinney v. City of Middletown, 49 F.4th 730, 737 (2d Cir. 2022) ("No genuine dispute of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.") (internal quotation marks omitted). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks omitted). For any burden of proof that rests with the nonmoving party, the movant can "point[ ] to a lack of evidence to go to the trier of fact on an essential element of

7

the nonmovant's claim." Id. (internal quotation marks and alterations omitted). Once the moving party carries its burden, "the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." McKinney, 49 F.4th at 738 (internal quotation marks omitted). In this analysis, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." ING Bank N.V. v. M/V Temara, 892 F.3d 511, 518 (2d Cir. 2018). Ultimately, "[t]he role of the district court on summary judgment is 'not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" McKinney, 49 F.4th at 738 (quoting Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011)).

### 1. FTCA Medical Malpractice

Plaintiff brings causes of action as medical malpractice claims against the United States. (See Compl.) The FTCA allows Plaintiff to bring this tort action against the federal government, although the cause of action is based on a state law tort. 28 U.S.C. § 1346(b)(1). To establish a claim of "medical malpractice under New York law, a plaintiff must prove '"(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries.'" Vale v. United States, No. 10 CV 4270, 2015 WL 5773902, at *10 (E.D.N.Y. Aug. 28, 2015), report and recommendation adopted, No. 10-CV-4270, 2015 WL 5773729 (E.D.N.Y. Sept. 30, 2015) (quoting Arkin v. Gittleson, 32 F.3d 658, 664 (2d Cir.1994) (collecting New York State cases).

### 2. Eighth Amendment Deliberate Indifference

Plaintiff also brings claims against Defendants for deprivation of his constitutional rights pursuant to the Eighth Amendment for inadequate medical care. (See Pl.'s Opp. at 25.) The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII. "To state an Eighth

8

Amendment claim against a prison official for providing inadequate medical care, an inmate must allege facts showing the offending official's 'deliberate indifference to a prisoner's serious medical needs.'" Thomas v. Wolf, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)). "A deliberate indifference claim has two elements. The first, which is objective, requires the inmate to show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a sufficiently serious medical condition.'" Id. (quoting Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006)). "The second element, which is subjective, requires the inmate to demonstrate that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" Id. (quoting Salahuddin, 467 F.3d at 280 and Hill, 657 F.3d at 122); Perez-Lopez v. Bialor, No. 20CV02518, 2023 WL 2682922, at *7 (E.D.N.Y. Mar. 29, 2023) (same).

### III. DISCUSSION

**A.  Defendants Are Entitled to Summary Judgment on Plaintiff's FTCA Claims** [4]

Defendants argue, inter alia[5], that the Court cannot hear Plaintiff's FTCA claims because Plaintiff's claims are barred by the FTCA's statute of limitations. (See Defs.' Br. at 13-16) (citing 28 U.S.C. § 2401(b)). For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiffs claims are untimely pursuant to the FTCA.

---

[4] The Second Circuit has clarified that dismissal of FTCA claims due to its "statute of limitations is not jurisdictional and may be subject to equitable tolling." Torres v. United States, 612 F. App'x 37, 41 (2d Cir. 2015). The Court therefore treats this dismissal as on substantive grounds, despite some courts' references to jurisdiction in the context of the FTCA's statute of limitations. (See Def's Br. at 12 ("In United States v. Wong, 575 U.S. 402 (2015), however, the Supreme Court held that the time limits set forth in 28 U.S.C. § 2401(b) are subject to equitable tolling, and, thus, cannot be treated as jurisdictional.")); but see Burke, 2020 WL 9816003, at *7 (dismissing for lack of subject matter jurisdiction on a motion for summary judgment where the Court determined claims were "barred by the FTCA's statute of limitations" and not entitled to equitable tolling.)

[5] Because, for the following reasons, the Court finds that Plaintiff's FTCA claims are untimely, the Court does not reach Defendants' other arguments for summary judgment on these claims.

9

As described above, "[t]he FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005); see also Cooke, 918 F.3d 77 at 81; Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004). The statute requires that 'the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.'" 28 U.S.C. § 2675(a). A "plaintiff . . . bears the burden of showing that she exhausted her administrative remedies by presenting her claim to the appropriate federal agency before filing suit." Cooke, 918 F.3d at 80. Additionally, the FTCA's waiver of sovereign immunity provides that "a tort claim against the United States shall be forever barred unless it is presented to the appropriate Federal agency within two years after such claim accrues and then brought to federal court within six months after the agency acts on the claim." Burke, 2020 WL 9816003, at *5 (internal citations omitted).

"Federal law determines the date that an FTCA claim accrues." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 139 (2d Cir. 2011) (citing Syms v. Olin Corp., 408 F.3d 95, 107 (2d Cir. 2005)); Michel, 2019 WL 4602828, at *3. "Typically, FTCA medical malpractice claims accrue at the time of injury." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998). However, "in certain instances, particularly in medical malpractice cases, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.'" Michel, 2019 WL 4602828, at *3 (quoting Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982)). This so-called "diligence discovery rule" applies when "the government conceals the acts giving rise to the plaintiff's claim, or where [the] plaintiff would reasonably have had difficulty discerning the fact or cause of the injury at the time it was inflicted.'" Kronisch, 150 F.3d at 121; see also Gilvar v. United States, 468 Fed. Appx. 31, 32 (2d Cir. 2012) (same).

10

Discovery of the "critical facts' of injury and causation is not an exacting requirement." Kronisch, 150 F.3d at 121. All that is required is "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." Id. (quoting Guccione v. United States, 670 F.Supp. 527, 536 (S.D.N.Y. 1987)). The "plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." Id. at 121 (quoting Guccione v. United States, 670 F.Supp. 527, 536 (S.D.N.Y. 1987)). While "'[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, ... such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.'" Pipitone v. City of New York, 57 F. Supp. 3d 173, 188 (E.D.N.Y. 2014) (quoting Kronisch, 150 F.3d at 121 (internal citation omitted)).

"Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation." McIntyre, 367 F.3d at 52 (citing Skwira v. United States, 344 F.3d 64, 77 (1st Cir. 2003)). To determine "'whether the claim has accrued after the duty to inquire has been triggered, courts ask 'whether the plaintiff, if armed with the results of that investigation, would know enough to permit a reasonable person to believe . . . that there is a casual connection between the [defendant] and her injury.'" Pipitone, 57 F. Supp. 3d 173 at 188 (quoting McIntyre, 367 F.3d at 52). "The inquiry is not limited to the plaintiff's subjective knowledge; it examines 'not only what was actually known but what a reasonable person, once fairly prompted to investigate, would have discovered by diligent investigation.'" Id. at 188 (quoting Litif, 670 F.3d at 44.)

### 1. Plaintiff's Claims are Time-Barred

Here, Plaintiff asserts that his claims were timely presented to Defendants upon his filing of the Government's prescribed Standard Form 95 ("SF-95"[6]), which is dated December 7, 2018.[7] (See ECF No. 56-3.)  Defendants, however, argue that Plaintiff's claims for medical malpractice accrued "no later than September 3, 2015," rendering the filing of Plaintiff's SF-95 untimely pursuant to the FTCA's presentment requirement of two years.  The Court agrees with Defendants and finds the FTCA claims untimely.

Plaintiff's claims implicate the July 6, 2015, surgery performed by Dr. Solfanelli and the period prior, when Plaintiff asserts his surgery was delayed for "382 days."  (See Compl. ¶ 27; ECF No. 56-3 at 4.)  As stated above, Plaintiff's claim accrued at the time where he had knowledge of "or with reasonable diligence should have discovered the critical facts of both his injury and its cause."  Michel, 2019 WL 4602828, at *3.  Based on the record, Plaintiff had knowledge of the critical facts of his claim in the period shortly after the July 6, 2015, surgery.  At the latest, Plaintiff's claim accrued during the September 3, 2015, follow-up exam with Dr. Solfanelli (ECF No. 59 ¶ 38).

Plaintiff claims that his surgery was "botched" by Dr. Solfanelli's failure to provide marsupialization of the cyst after removal, which was recommended by Dr. Ganly at MSK years

---

[6] See 28 C.F.R. § 14.2 ("For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.")

[7] Defendants do not dispute that the SF-95 was dated December 7, 2018, but assert that the form was not received by the BOP until December 13, 2018.  (See ECF No. 59 at 34 ("Defendants admit that Plaintiff's SF-95 is dated December 7, 2018, but denies that it was received by BOP on December 7, 2018."); Def's. Br. at 16 ("the SF-95 administrative claim dated December 13, 2018 is untimely."))  The Court, construing this evidence in the most favorable light to the Plaintiff, credits the earlier date and proceeds on the premise that Plaintiff's claim was presented on December 7, 2018.  See ING Bank, 892 F.3d 511 at 518 (holding that, for the purposes of summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.")

prior to Plaintiff's incarceration. (See ECF No. 59 ¶ 9; Compl. ¶¶ 10-14.) Shortly after the surgery, Plaintiff began to lose his sense of taste and smell and had issues with his sinuses. (ECF No. 59 ¶¶ 37, 85.) Plaintiff also began to experience "severe throbbing pain on the left side of his face for several days after [the July 6, 2015] surgery." (Id. at ¶ 65; Klausner Report at 6.)) "By August 2015, plaintiff began to have an issue with his sinuses and, at a subsequent follow-up with the oral surgeon [on September 3, 2015], it was then determined that the cyst had actually not improved but indicated reinfection and inflammation of the mouth, and a recurrence of the upper left jaw cyst." (Id. at ¶ 67; Klausner Report at 6; Pl's Dep. Tr. 47 (stating that Plaintiff himself believed at this time that his surgical wound "had become infected.")) Given the record, Plaintiff subjectively knew or should have known at this time that his injuries were caused by the July 6, 2015, surgery performed by Dr. Solfanelli in the period shortly after the surgery. At the latest, Plaintiff learned of the critical facts of his injury at the September 3, 2015 follow-up exam, which substantiated Plaintiff's concern that his surgical wound had become infected and was exacerbating his prior ailments. (See Pl's Dep. Tr. 47; Solfanelli Dep. Tr. 48 (stating that at the September 3, 2015 examination, Plaintiff complained of "a questionable reinfection of the left maxilla. It was inflamed and boggy."))

In response, Plaintiff counters that he did not have knowledge of the critical facts of his injury until his December 12, 2016, consultation with Dr. Bifano. (Pl's Opp'n at 18.) There, Plaintiff claims that Dr. Bifano informed him of the "significant bone loss that he sustained in relation to the upper left maxillary cyst in question." (Id.) Plaintiff argues that because he was incarcerated, "he had no opportunity to seek out medical assistance . . . [and] there is no 'reasonable diligence' that [Plaintiff] could have exercised." (Id.) Thus, Plaintiff argues that he did not learn the critical facts of his injury until December 12, 2016, and his SF-95 filed December 7, 2016, is then timely within the FTCA's two-year statute of limitations.

13

Plaintiff, however, misunderstands the standards for knowledge pursuant to federal law. Just because Plaintiff was incarcerated at the time his claim accrued does not mean that he did not possess knowledge of the critical facts of his injury. In fact, the record is replete with facts that demonstrate Plaintiff's subjective knowledge of his injuries and their cause. For instance, Plaintiff states in his deposition that he knew by late 2015 that his July 6, 2015, surgery had been "botched." (See Pl's Dep. Tr. 131-132 (explaining that in a conversation in "December of '15" with his "medical duty officer" Plaintiff stated "[a]nd my point to him was well, you guys have done enough damage as is. I have a botched surgery, I have an infection, your doctor is telling you I have an infection, your in-house -- one of your in-house doctors.")); (Pl's Dep. Tr. 109 (describing that, around "September, October '15" Plaintiff verbally complained to BOP staff about the "problems that was [sic] created from the botched operation at Canaan.")) As stated above, "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation . . ." Kronisch, 150 F.3d at 121 (internal quotations and citations omitted) (emphasis added). These facts demonstrate Plaintiff's subjective knowledge of the critical facts of his injury by late 2015.

Moreover, Plaintiff was experiencing severe pain, swelling, and difficulty with speech and smell in the 382 days prior to and shortly after his surgery. (Pl's Opp. at 29.) This protracted period of pain, in which Plaintiff claims his cyst "grew from the size of a marble to the size of a plum" (id.) and the failure of the July 6, 2015, surgery to alleviate Plaintiff's symptoms is sufficient "to lead a reasonable person . . . to investigate whether the worsening of [his] condition was caused by inadequate medical care." Torres, 612 F. App'x 37 at 40. In addition, though, Plaintiff received a follow-up examination with Dr. Solfanelli on September 3, 2015, where Dr. Solfanelli "determined that the cyst had actually not improved," but indicated "reinfection and inflammation of the mouth, and a recurrence of the upper left jaw cyst." (Klausner Report at 6; Pl's Dep. Tr. 47.)

14

Thus, Plaintiff was put on notice at that time that the original surgery was, in his own words, "botched." (Pl's Dep. Tr. 132.) These facts and the totality of the record demonstrate that Plaintiff knew or should have known the critical facts of his injuries by September 3, 2015, at the latest.

Plaintiff suggests that because he did not become aware of the full extent of his injuries until his December 12, 2016, consultation with Dr. Bifano, he did not know the critical facts of his injury until then. (See Pl's Opp'n at 18.) Just because Plaintiff did not have full awareness of the extent of his injuries, however, does not mean that he did not know the critical facts about his injury. See, e.g., Torres v. United States, No. 12-CV-6011, 2014 WL 4805035, at *5 (E.D.N.Y. Sept. 26, 2014) ("That Plaintiff was unaware of the full extent of the harm caused by Dr. Karban's purported failure to timely diagnose her colitis or of the fact that she would suffer further complications due to the same does not preclude the court from finding that her cause of action had accrued as of that date."); J.D. ex rel. Doe v. United States, No. 10–CV–4296, 2011 WL 292010, at *8 (S.D.N.Y. Jan. 28, 2011) ("[P]laintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim' for his claim to accrue."); Mendez, 655 F. Supp. 701 at 705 ("To be aware of an injury [for purposes of determining accrual under the FTCA], plaintiff need not know the full extent of his or her injury.") (internal quotations and citation omitted).

Thus, the Court finds that Plaintiff knew or should have known the critical facts of his injuries by September 3, 2015, at the latest. The FTCA claims accrued by that date. Because Plaintiff did not file his SF-95 until December 7, 2018, at the earliest, Plaintiff's FTCA claims are time-barred and must be dismissed.

### B.   Eighth Amendment Claims for Deliberate Indifference

Plaintiff also asserts claims under the Eighth Amendment for deliberate indifference of a serious medical need, due to Defendants' delay in providing Plaintiff's surgery. (See Compl. ¶ 27;

15

Pl.'s Opp'n at 25-35.) The Complaint, however, does not identify any government employees who violated Plaintiff's constitutional rights, instead naming several federal agencies, John and Jane Doe Defendants and XYZ entities. (See Compl.) For the reasons set forth below, the Court finds that Plaintiff's Eighth Amendment claims are non-cognizable due to his failure to sue government employees in their individual capacities as Defendants.

As a threshold matter, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Unlike the waiver of sovereign immunity explicitly granted by statutes like the FTCA, actions for constitutional deprivations by federal officials can only be brought in the context of an implied right of action. This restriction is because "Congress has never 'provide[d] a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.'" Cohen v. Trump, No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024), cert. denied, No. 24-41, 2024 WL 4529814 (U.S. Oct. 21, 2024) (quoting Ziglar v. Abbasi, 582 U.S. 120, 130 (2017)). "In 1971, however, the Supreme Court in Bivens created an implied cause of action such that damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials." Id. (citing Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (hereinafter "Bivens"), 403 U.S. at 395).

This implied right of action, however, "must be brought against individual federal agents or employees in their individual capacities through a Bivens action," and not directly against the United States. Davila v. Gutierrez, 330 F. Supp. 3d 925, 937 (S.D.N.Y. 2018), aff'd, 791 F. App'x 211 (2d Cir. 2019). Again, "while the FTCA provides a limited waiver of sovereign immunity for certain tort claims, Congress has not waived the United States' sovereign immunity with respect to constitutional tort claims." Id. (citing Meyer, 510 U.S. 471 at 478 ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."). Therefore, "Constitutional claims

16

not brought as a Bivens action against individual federal defendants must be dismissed for lack of subject matter jurisdiction." Id.; see also Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.")

### 1. The Court Lacks Jurisdiction over Plaintiff's Eighth Amendment Claims

Here, Plaintiff seems to recognize that his claims must be dismissed due to his failure to bring this action against federal officers in their individual capacities. (See Pl's Opp'n at 29) ("In light of Plaintiff not naming certain BOP employees and individuals in the complaint in relation to his Bivens claim, Plaintiff respectfully withdraws said claim as asserted in the complaint.") Despite this recognition, though, Plaintiff asserts throughout his opposition that the deliberate indifference of several BOP employees violated the Eighth Amendment. (See id. at 19-28; 29 ("Plaintiff, Brandon Lisi, has asserted a valid 8th Amendment Deliberate Indifference Claim as against the Government . . .") As Defendants point out, however, Plaintiff did not identify individual BOP employees until his deposition on February 17, 2023, (see Pl's Dep. at 107, 115, 116, 144) and did not at any time add or even attempt to add these defendants to the suit. (See Def.'s Reply Br. at 5.) For these reasons alone, the Court finds that it lacks jurisdiction to hear Plaintiff's purported Eighth Amendment claims.

Additionally, though, even if the Court were to credit Plaintiff's opposition to the present motion as somehow naming these defendants for the purposes of the suit, the statute of limitations has long since run. "The statute of limitations for Bivens claims is governed by the statute of limitations applicable to New York state law 'personal injury claims not sounding in intentional tort.'" Gonzalez v. Hasty, 802 F.3d 212, 219–20 (2d Cir. 2015) (quoting Chin v. Bowen, 833 F.2d 21, 23–24 (2d Cir. 1987). "New York Civil Practice Law and Rules section 214(5) provides a

17

three-year statute of limitations for such claims." Id. (emphasis added).  Like the FTCA claims described above, however, federal law governs the determination of when the statute of limitations begins to run.  Kronisch, 150 F.3d 112, at 123.  Thus, "[a] Bivens claim accrues under federal law for statute of limitations purposes when a plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." Gonzalez, 802 F.3d 212 at 220.  To date, Plaintiff has not sued any named officials in their individual capacities as required to make out his Eighth Amendment claims through Bivens.  Even if the Court were to credit Plaintiff's opposition brief as naming individuals for the purposes of suit, then, the claims would still be well outside of the three-year statute of limitations, as Plaintiff has not been incarcerated since May of 2020, and complains of conduct that occurred from 2014-2016.  (See Pl's Opp'n at 25-35.)  Plaintiff's opposition brief, meanwhile, was filed on August 9, 2024.  (ECF No. 55).

Finally, as the Second Circuit makes clear, "[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.'" Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (citing Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2d Cir.1993); see also Cason v. Valentine, No. 16CV3710, 2023 WL 394886, at *3 (E.D.N.Y. Jan. 25, 2023) ("Although a defendant can initially be named as a John Doe defendant, failure to fully name that defendant within the applicable statute of limitations period requires dismissal of the claim.") (citing Rochester v. County of Nassau, 10-CV-6017, 2019 WL 955032, at *3 (E.D.N.Y. Feb. 27, 2019)).  Plaintiff also makes no assertions that would allow him to relate the claims against the named John Doe Defendants back to the original complaint, as he does not allege that he "made a mistake concerning the parties' identity." FED. R. CIV. P. 15; see also Hogan v. Fischer, 738 F.3d 509, 519 (2d Cir. 2013) ("We have held that, although "Rule 15(c) explicitly allows the relation back of an

18

amendment due to a 'mistake' concerning the identity of the parties ... [,] the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.")[8] Plaintiff failed to add any of these Defendants within the statute of limitations period and cannot maintain a Bivens action against the United States or its agencies. Thus, Plaintiff's claims for deliberate indifference under the Eighth Amendment are not cognizable and must be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED and this action is DISMISSED.

**SO ORDERED.**

Dated:   February 11, 2025
         Central Islip, New York

                                  /s/ JMA
                                JOAN M. AZRACK
                                UNITED STATES DISTRICT JUDGE

---

[8] Additionally, the Court notes that Plaintiff cannot meet the Rule 15(c)(1)(A) standard permitting relation back where "the law that provides the applicable statute of limitations allows relation back." FED. R. CIV P. 15(c)(1)(A). This Circuit has held that where federal claims are subject to the more permissive New York State statute of limitations, parties can take advantage of New York's "special procedure for claims against John Doe Defendants." Hogan, 738 F.3d 509 at 519. Under the New York rule,

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney 2013). This procedure, however, does not apply here. Plaintiff knew the identity of all the individuals he asserts in his opposition to summary judgment were deliberately indifferent to his serious medical need – in fact it was from Plaintiff's February 17, 2023, deposition that Defendants first learned of these new individuals. (See Pl's Dep. Tr. 107 (naming Counselor Ruffin); Tr. 115 (naming Counselor Castalano); Tr. 116 (naming Counselor Manetta); Def's Reply Br. at 5.). At no point, however, has Plaintiff even attempted amending the Complaint to substitute these parties. Thus, Plaintiff cannot take advantage of this exception to now substitute named individuals for the John Doe Defendants. See Cason, 2023 WL 394886 at * 5 (finding Plaintiff's claims against John Doe Defendants time-barred pursuant to N.Y. C.P.L.R. § 1024 where, after "Plaintiff learned the identity of the John Doe defendants during a deposition . . . [she] [i]nexplicably, [] waited two years . . . before requesting that the caption be amended.")

19